[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE MOTION TO DISMISS
Plaintiffs bring these two actions in six counts each seeking, inter alia, declaratory judgments, damages and injunctions. Defendants move to dismiss for lack of subject matter jurisdiction.
Facts Alleged
Plaintiffs are a union and certain employees of the state. The defendants are the state departments of Mental Retardation (DMR) and Transportation (DOT) and various public officials in their "official and individual" capacities. The defendants have issued certain "lay-off notices" to state employees. The notices said they were to be effective May 17, 1991 and that the ". . . action is taken as a result of the severe fiscal difficulties that the State of Connecticut is experiencing and the resulting need to reduce our work force in accordance with budgetary constraint."
In the first count of each complaint plaintiffs claim the lay-off CT Page 10821 notices violate C.G.S. 5-193 et seq. (State Personnel Act S.P.A.). They also claim "subcontracting" has occurred in contradiction of public policy and that has resulted in the lay-offs.
In the second count they allege they are entitled to protection under collective bargaining agreements (Agreements). Each Agreement provides that "no full-time permanent employee will be laid off as a direct consequence of the exercise by they State employer of its right to contract out." Some employees have been laid off and such actions are anticipatory repudiation of the Agreements.
In the third count they allege an impairment of contract rights in violation ofArticle 1, Section 10 of the United States Constitution.
In the fourth count they allege violation of contract rights in violation of the Fourteenth Amendment to the Constitution of the United States and Article 1, Section 10 of the Connecticut Constitution — 1983 claims.
In the fifth count they allege violations of the State Employee Relations Act (SERA). They allege lock-outside interference with the unions and refusal to bargain in good faith.
In the sixth count they allege violations of the Agreements and the filing of grievances. They seek an injunction until those grievances are processed.
Law
I. Sovereign Immunity
The doctrine of sovereign immunity exists in Connecticut. Fetterman v. University of Connecticut, 192 Conn. 539. It admits of three exceptions.
A. Waiver
The waiver by the state of its sovereign immunity must be express and by legislation showing consent to be sued. White v. Burns, 213 Conn. 307, 312. "It may be stated we think as a universal rule on the construction of statutes limiting rights, that they are not to be construed to embrace the government or sovereignty unless by express terms or necessary implication such appears to have been the clear intention of the legislature, and the rights of the government are not to be impaired by a statute unless its terms are clear and explicit, and admit of no other construction." State of Connecticut v. Shelton, 47 Conn. 400,404-405. CT Page 10822
1. First Count (S.P.A.)
The plaintiffs point to no specific legislation expressly authorizing suit under S.P.A.
 2. Second Count (Breach of Contract)
a. Plaintiff's argue that SERA waives the doctrine, not expressly but "by force of a necessary implication" (emphasis in plaintiffs' brief). The court does not find as a matter of law that the fact that a state contract exists results in the "necessary implication" that the state may be sued.
b. Plaintiffs also argue that the state's agreement to pay wages is a waiver. The court cannot find it to be so in law.
 3. Third Count (U.S. Contract Clause)
The court can find no waiver in regard to this claim.
4. Fourth Count (1983)
The court can find no waiver in regard to this claim.
5. Fifth Count (SERA)
This statute does not grant an express waiver for this type of action, although it does allow enforcement of certain orders in this court. C.G.S. 5-274 (b) and (d); 31-107; 31-108; 31-109.
 6. Sixth Count (In Aid of Grievances)
The plaintiffs have presented no indication of a waiver of the doctrine for this count.
These agreements were specifically approved by the legislature. Conn. Gen. Stats. 5-278. The agreements both prohibit arbitration of lay-offs. Neither mentions bringing court actions. This is evidence that in regard to lay-offs the plaintiffs do not have a right to come to court if the lay-offs are made in accordance with Conn. Gen. Stats.5-241 (a). Plaintiffs do not claim the lay-offs were not made in accordance with that statute.
 B. Claim of Violation of Constitutional Right
CT Page 10823
 1. First, Second Fifth Counts (S.P.A. Breach of Contract SERA)
No claim is made of any violation of constitutional right under these three counts and thus sovereign immunity is a defense as to each.
2. Third Count (U.S. Contract Clause)
Under the United States Constitution "no state shall pass any . . . Law impairing the Obligation of Contracts . . . ." This prohibition against impairment of contracts is not to be read literally. Keystone Bituminous Coal Assn. v. DeBenedictis,480 U.S. 398, 428. The "question is whether the state law has in fact operated as a substantial impairment of a contractual relationship." Schieffelin Co. v. Department of Liquor Control,194 Conn. 165, 177-178. Plaintiffs claim that defendants are acting under "law" that does not yet exist. They do not tell the court what law the state passed to impair the obligation of their contract rights. As plaintiffs say in their brief, page 24, it is "as a result of such action [the layoffs] the Defendants . . . impair the plaintiffs' . . . Agreement." Again, on page 27, they say it is "the layoff program [that] works a severe impairment of a contract . . ." They do suggest that an improper application of legislation may violate the Contract Clause but cite no authority.
3. Fourth Count (1983)
This count claims constitutional protection under both the Contract Clause and the due process clause. No facts are alleged about the passage of a law that impairs a contract of plaintiffs. (See B 2 above).
They claim a property interest in their contract and defendants do not seem to dispute that.
Defendants do claim that in regard to due process claims a distinction is to be made between layoffs and "for cause" dismissals. In the complaint these layoffs are not such dismissals. This is not a "for-cause" firing and thus there is no constitutional right to a hearing. Perretta v. New Britain, 185 Conn. 88, 96.
 4. Sixth Count (In Aid of Grievances)
The court finds no allegations in this count that proceeding, CT Page 10824 or not proceeding, through the grievance process has some constitutional limitations that would bar the doctrine of sovereign immunity.
 C. Actions in Excess of Statutory Authority
In order to sail over the bar of sovereign immunity the improper actions alleged must be not only in excess of the statutory authorization but that excess must also be substantial.[1]
One complaint alleges authority in the DMR and its Commissioner but not in the Secretary. The other alleges authority in the DOT and its Commissioner but not in the Secretary.
Plaintiffs all claim under C.G.S. 5-241 (a) that they may not be laid off because the defendants have not cited any disability, delinquency, incompetence, misconduct or neglect of duty. However, that statute provides that they may be laid off for "lack of work, economy, insufficient appropriation, change in departmental organization [or] abolition of position . . . if [no] other employee in the same classification performing comparable duties with less state service is to be retained in the same department, agency or institution." That is not alleged and thus there is no claim of actions substantially in excess of anyone's statutory authority.
 D. Re Claims Against Individual Defendants
The doctrine of sovereign immunity bars actions against state officers in either their official or individual capacity "[w]hen the state is the real party against whom relief is sought and where judgment for this plaintiff, although nominally against the officer as an individual, would operate to control the action of the state or subject it to liability." Fetterman v. University of Conn., 192 Conn. 539, 552 (emphasis in original). Horton v. Meskill, 172 Conn. 615, 623. Thus, this motion to dismiss will stand or fall on the general principles of sovereign immunity because none of these persons as individuals is a real party in interest.
II. Exhaustion
When an adequate administrative remedy is provided by law it should be exhausted. Shortt v. New Milford Police Department,212 Conn. 294, 305-310; Kolenberg v. Board of Education, 206 Conn. 113,122-123; Doe v. Heintz, 204 Conn. 17, 34-37. CT Page 10825
Our statute, C.G.S. 5-270 et seq., deals with the problems, breaches and violations alleged in the complaints. The Agreements also deal with those (DMR Articles 5, 13, 16, 22 inter alia; DOT Articles 5, 13, 16, 22 inter alia).
Article 16 11 of both the DMR and DOT Agreements provides specifically that the "decision to lay off employees" is not subject to grievance or arbitration. The complaint alleges in the first and second counts that the lay-offs are the result of "contracting out." That issue might be arbitrable and "is not unlike those usually brought for employee grievances." School Administrators Assn. v. Dow, 200 Conn. 376-383 and particularly footnote 4. In the instant Agreements even the question of arbitrability is arbitrable. DMR Agreement, Article 16, 9(a); DOT Agreement, Article 16, 9(a). Thus on that narrow issue plaintiffs should first exhaust their remedy of arbitration.
Of course, unlike the court in Dow, we do find that the parties intended that arbitration is not allowed for lay-offs per se. School Administrators Assn. v. Dow, supra, 383-4 n. 5. Thus as to the lay-offs there is no remedy to exhaust. Only if the plaintiffs are truly alleging that somehow the contracting-out issue is distinguishable from the "decision to lay-off" issue need plaintiffs' first resort to arbitration. Motions to dismiss are granted.
N. O'Neill, J.